## Case No. 11,312.

POSTMASTER GENERAL v. RICE et al.

[1 Gilp. 554;[1] 16 Haz. Pa. Reg. 18.]

District Court, E. D. Pennsylvania. May 19, 1835.

DEPUTY POSTMASTER'S BOND—AUTHORITY OF POST-MASTER GENERAL—LIMITATIONS—EVIDENCE OF ACCOUNT—ACT OF MARCH 3, 1825—RETROACTIVE EFFECT.

1. The postmaster general has a right to require a bond from a deputy postmaster, for the faithful performance of the duties of his office, although such bond is not expressly required by law.

[Cited in Barnet v. Abbott, 53 Vt. 126; Barnes v. Webster, 16 Mo. 266; Sweetser v. Hay, 68 Mass. 53.]

2. The equitable rule of limitation applied to bonds, where there has been no demand for

[1] [Reported by Henry D. Gilpin, Esq.]

twenty years, is a mere presumption of payment, not an absolute limitation.

3. The provisions of the act of 3d March, 1825 [4 Stat. 102], substitute a certified statement of the settled account as evidence in suits against deputy postmasters, in lieu of the certified copy of the account current required by the provisions of the act of 30th April, 1810 [2 Stat. 592].

4. The provisions of the act of 3d March, 1825, releasing the sureties of a deputy postmaster where suit is not brought within two years after a default, do not apply to a default which occurred before the passing of the act.

On the 26th February, 1816, John Appleback was appointed a deputy postmaster at Cherryville, in the state of Pennsylvania. At the time of his appointment, he gave bond to the postmaster general, together with Owen Rice and Sebastian Gundt, the defendants, in the penal sum of six hundred dollars, conditioned for the faithful execution of the duties of his office, and the punctual payment to the postmaster general of all moneys coming to his hands for postages. Mr. Appleback continued in office until the 1st April, 1820, at which time it appeared that a small balance had been left unpaid at the termination of every quarter, from the period of his first appointment. His accounts were subsequently examined and adjusted at the post-office department, and, on the 15th June, 1831, a balance was certified to be due from him of fifty-one dollars and sixty-five cents. To recover this balance suit was brought against all the parties to the bond. Mr. Appleback was not found, but the defendants appeared and pleaded the general issue.

On the 19th May, 1835, this issue came on for trial before Judge HOPKINSON and a special jury. After proof of the bond, the United States gave in evidence, though it was objected to on the part of the defendants, a statement certified under the seal of the post-office department, containing an account of the balance due from Mr. Appleback, on his post-office accounts, at the termination of each quarter, and the aggregate of these, amounting to the sum now claimed. The defendant, Owen Rice, proved that in the year 1825, long after this default of his principal occurred, but some years before this suit was brought, he had been himself appointed a deputy postmaster by the department.

Mr. Gilpin, Dist. Atty., for the postmaster general.

This suit is brought on a joint and several bond to which the defendants are parties. It is a bond similar to those usually given at that time by a deputy postmaster, for the faithful execution of the duties of his office. It requires that officer expressly, "once in three months, to pay all moneys that shall come to his hands for postages, to the post-master general." That Mr. Appleback failed to do so, is proved by a certified statement under the seal of the post office department, which is declared by the thirty-first section of the act of 3d March, 1825, to be "evidence in

all suits brought by the postmaster general for the recovery of balances or debts due from postmasters." The liability of the defendants therefore under their bond is fully established. 3 Story's Laws, 1996 [4 Stat. 102].

Mr. Scott, for defendants.

This is certainly a case of great hardship on the defendants, who are merely sureties, and one of whom at least is proved, by the act of the government, which, in 1825, appointed him a postmaster, to be a person of probity. Eleven years were suffered to elapse after the default of the principal was known, before the account against him was even stated, the deficiency communicated to his sureties, or a step taken for its recovery. Under these circumstances, the defendants are certainly entitled to avail themselves of all legal objections to this tardy claim. These are numerous; they relate to the bond itself, to the evidence of default, and to the time and mode of recovery. This suit cannot be sustained in this court on this bond. It purports to be an official bond, taken by the postmaster general, ex virtute officii; but all such acts are merely ministerial; they are the acts of an agent of limited powers; they cannot therefore extend beyond his powers. Now there was no law which authorised him to take this bond at the time he did so; the United States did not intend to exact such a guarantee from a deputy postmaster, or they would have so declared by law. The act of the agent, therefore, was neither within the letter nor spirit of his authority, and is void. If it be regarded as a mere voluntary bond, good at common law, though not by statute, then it is not sufficient to found this action on, in this court, for it does not present a case arising under the laws of the United States; a circumstance necessary to give this court jurisdiction. The case of Postmaster General v. Early differs from this, in being a suit brought against a delinquent postmaster himself, not his sureties, and in being instituted in the circuit, not the district court. 12 Wheat. [25 U. S.] 136. But there is a fatal objection, even if the action on the bond can be sustained. There is no legal proof of default. The sole evidence offered on the part of the United States, is a paper, certified indeed under the seal of the post-office department, but which, in a controversy between individuals, would be worthless. By this mode, the United States at first assume the settlement of the account, and then make their own settlement evidence of their claim. If they are to exercise such a privilege, they must at least do so in strict conformity with the law. By the twenty-ninth section of the act of 30th April, 1810, it is provided, that "certified copies under the seal of the general post office, of the accounts current of the several postmasters, after the same shall have been examined and adjusted at that office, shall be admitted as evidence." Such

was the law at the time the contract was made, the bond given, and the default occurred. Now this paper is a mere abstract of balances due at the end of each quarter; it is not even an account; it contains not a single credit; much less is it an account current. It is not evidence under the law in question. By the thirty-first section of the subsequent law of 3d March, 1825, "certified statements of the accounts of postmasters, after the same have been examined and adjusted, are to be admitted as evidence;" but this law is not to have a retrospective effect and to affect accounts closed, as this was, five years before it passed. This paper, however, is not even such a statement; it was surely meant that a statement should show the court what the postmaster had received and what he had paid; it was surely intended that his default should be made manifest. That is not done here. All that we see is a mere memorandum of a debt, as made up at Washington; nothing that can pretend to be called a statement of the accounts. 2 Story's Laws, 1166 [2 Stat. 592]; 3 Story's Laws, 1996 [4 Stat. 102].

Supposing, however, the bond to be sufficient, and the default to be proved; yet these defendants, being merely sureties, are discharged by the negligence of the public officers in bringing this suit. The bond was given on the 6th February, 1816, a default occurred on the 1st July, 1816, the suit was brought on the 18th June, 1831. Now if there were no express statute on the subject, so great a lapse of time would give a right to presume payment; this is especially so in the case of sureties, and it ought to be; here the principal, Mr. Appleback, has been suffered to escape; ten years ago he might have been found and could have paid the debt; he now goes untouched, while his sureties are called on to pay his debts. But there is an express statute. By the third section of the act of 3d March, 1825, it is provided, that "if the postmaster general shall fail to institute suit against a postmaster, who shall have made default, and his sureties, for two years from and after such default shall be made, then the sureties shall not be held liable to the United States, nor shall suit be instituted against them." Now in this case, more than two years did elapse, not only after the default was made, but after this law was passed, before the suit was brought; and of course the defendants are persons whom congress clearly meant to exempt. It is not a sufficient answer to say, that this construction gives to the law a retrospective character, and applies it to occurrences which happened previous to its passage. This effect was well known at the time. It was meant to change the existing policy; to carry into effect a new principle; and this congress had clearly a right to do. In our state and in New York, measures similar in principle have been adopted by the legislature, and the courts have not considered them as retrospective laws. To hold the reverse, would be to sustain the most palpable unfairness. The law of 1825, exempts every surety who subsequently gives bond, unless suit is instituted within two years after default; yet those who have previously done so, are to be held responsible for ever. To admit the rule, therefore, to apply to all cases, would be but to place them all on an equal footing; to apply it differently in one from another will be not merely to violate its avowed object, but to do a great injustice. 3 Story's Laws, 1986 [4 Stat. 102]; U. S. v. Kirkpatrick, 9 Wheat. [22 U. S.] 720; Postmaster General v. Early, 12 Wheat. [25 U. S.] 136; Com. v. Duane, 1 Bin. 98, 601; Eakin v. Raub, 12 Serg. & R. 330; People v. Jansen, 7 Johns. 332.

Mr. Gilpin, for the postmaster general, in reply.

The right of an officer of the United States, to secure the payment of a debt that may become due to them, by receiving security which is voluntarily given, even though not required to do so by law, seems to be too plain to admit of question; it is a means, certainly not illegal or improper, to attain an end contemplated by law; and a competent court would undoubtedly aid him in such a course. But in this case the act of the postmaster general is strengthened by usage and by law. To take bonds from deputy postmasters for the performance of their duty, has been an invariable usage, and these bonds have been repeatedly the subjects of judicial decision. It is true, that before the act of 3d March, 1825, the postmaster general was not required, in explicit terms, to demand them; but it is impossible to read the previous law of the 30th April, 1810, and not perceive that they were contemplated by it. The twenty-ninth section directs the manner in which suits are to be instituted, for "the recovery of balances due to the general post office, whether they appear by bond or obligation, or otherwise;" and the forty-second section expressly alludes to "the bonds given by deputy postmasters, for the faithful execution of the duties of their office." The same law authorises the postmaster general to bring these suits. The act of 3d March, 1815, removes every doubt that this is the court in which he ought to proceed, for it extends its jurisdiction to all suits brought by any officer of the United States, under the authority of an act of congress. 2 Story's Laws, 1166, 1168, 1531 [2 Stat. 602, 3 Stat. 244]; 3 Story's Laws, 1986 [4 Stat. 102]; Armstrong v. U. S. [Case No. 549]; Dugan v. U. S., 3 Wheat. [16 U. S.] 172; Postmaster General v. Early, 12 Wheat. [25 U. S.] 136.

The document offered to prove the default, is exactly that which the thirty-first section of the act of 3d March, 1825, means to make sufficient evidence; it is a statement of the account after settlement. The act of 30th April, 1810, required certified copies of the

accounts current; this law requires a statement of them; a variation occasioned by the experience of fifteen years. The paper offered is not a mere statement of balances, as has been alleged, but it is a certificate of the account as it stood at the end of every quarter, settled and adjusted; it is not like a general balance, in which every thing is thrown together, but there are items corresponding, as to the time of settlement, with those which must appear on the books of the postmaster, and consequently be susceptible of comparison and correction. Either this is what the law meant, or copies of the accounts on file must be given: that the latter are not intended is apparent from the change of the law: it follows that such a document as this is the evidence required. This provision differs essentially from that of the second section of the act of 3d March, 1797, on which a judicial construction has been placed by this court; there it is made necessary to produce "a transcript of the books and proceedings of the treasury;" that is similar to the former law, relative to the post-office, requiring copies of the accounts current, not to the present, requiring merely a statement; the decision of this court, therefore, in the case referred to, rather sustains than controverts the position now taken on the part of the United States. 1 Story's Laws, 464 [1 Stat. 512]; 2 Story's Laws, 1166 [2 Stat. 592]; 3 Story's Laws, 1996 [4 Stat. 102]; U. S. v. Patterson [Case No. 16,008].

The objection as to the time at which the suit was brought, presents itself in two aspects; first, as affording a reasonable presumption of payment; and secondly, as showing such neglect on the part of the postmaster-general, as to bar his right of action. In answer to the first it may be observed, that twenty years of continued default is the shortest time which will raise even a presumption of payment of a bond. Here at most ten or eleven years elapsed; for though a default may have occurred earlier, payments and settlements were made by Mr. Appleback as late as April, 1820. No attempt, besides, is made to fortify the presumption of payment by any evidence. To the second point it is answered, that no laches on the part of an officer can affect the rights of the United States. It is true the defendants endeavour to relieve themselves from the operation of this principle, by referring to the third section of the act of 3d March, 1825, where the United States have themselves made their rights dependent on the conduct of their officers; it would relieve them were it applicable to their case; but it is not. To apply it to the present case would be to make it retrospective; nay more, it would be to leave themselves actually without remedy, in every case of default, not prosecuted, which had occurred previous to the 3d March, 1825. Under no circumstances would it be proper to make such a retro-spective application of a law. The point, however, is not left in the slightest doubt; the forty-sixth section of the same act expressly declares, that its provisions "are not to affect any existing debt or demand, due to the department, but that all such are to be adjudged, determined and executed according to the present laws." As regards this liability, therefore, of the defendants, no neglect has occurred to impair it, and if it is established by and arises out of the evidence, it still continues as a just foundation of the action. 3 Story's Laws, 1999 [4 Stat. 114]; U. S. v. Kirkpatrick, 9 Wheat. [22 U. S.] 720; U. S. v. Vanzandt, 11 Wheat. [24 U. S.] 184; Dox v. Postmaster General, 1 Pet. [26 U. S.] 318; Locke v. Postmaster General [Case No. 8,441]; Postmaster General v. Reeder [Id. 11,311].

HOPKINSON, District Judge (charging jury). This is an action brought to recover a balance due by John Appleback. He was appointed postmaster at Cherryville in 1816, and then gave bond with the two defendants, who were his sureties, to pay over all balances of postage, and to perform correctly the duties of his office. When taken, there was no law requiring this bond; but it was the settled usage of the department to take such a one from every postmaster, on his appointment. In the case of Postmaster General v. Early, which has been so frequently referred to, it was made a serious question whether such a bond was legal, and whether a suit could be sustained on it. The supreme court decided that the postmaster general had a fair right to take such a bond, and that, in case of default in paying over a balance of postage, the obligors were liable. That question, therefore, is now at rest.

The bond, then, is good. We next come to the account. That shows the various balances due and unpaid at the end of each quarter. It was the only evidence offered on the part of the United States. At the time it was offered, it was objected to by the counsel of the defendants. I had some doubt as to its being such a "statement of the account" as the law of 3d March, 1825, contemplates; though it was certainly the intention of that law to substitute a statement of the settled account, instead of the copies of accounts current, which that of 30th April, 1810, required. I admitted the evidence, however, because the accounts current could be obtained from Washington, though with considerable delay and at some expense; and it was not alleged or pretended that there was any error of fact in the document offered. The point, too, is reserved for the benefit of the defendants; and they may have the advantage of a more deliberate argument, should they desire it. In giving your verdict, therefore, you are to consider this document as legal evidence of the facts it contains; and as such it establishes, primâ facie, the debt as due to the United States.

Have the defendants shown you that it has been satisfied, or that there is any circumstance to discharge them from their obligation to make it good? Their first ground is lapse of time. In ordinary simple contract debts, a right of recovery is barred in six years; but this does not extend to bonds. In courts of equity, however, the same principle has been applied to bonds, but the period of limitation is settled at twenty years where there has been no demand; this, however, is not an absolute limitation, as in the former case, it is a mere presumption of payment. The defendants, therefore, cannot rely on this; twenty years have not elapsed; only eleven years on the last item, and but sixteen on the earliest default. Besides, no evidence of any sort has been offered to sustain this presumption of payment. I am clearly of opinion that there is no legal presumption that this debt has been paid.

The next ground is one of law also, and has been very fully argued. It depends on the effect which the proviso in the third section of the act of 3d March, 1825, has on this claim. The argument of the defendants' counsel is, that it applies to previous cases, to cases occurring before the law itself was passed. That is not my opinion. Bonds were required to be taken by the postmaster general for the first time by the law of 3d March, 1825, and this clause directing him to bring suit on them, within two years after default, applies only to those bonds. What the district attorney says is perfectly true, that if it is to be applied to previous bonds, it will cut off the postmaster general from bringing suit, in cases where there was no law requiring him to do so. Previous to the act of 3d March, 1825, there was nothing whatever which directed him to institute proceedings within two years; his delay was not illegal, and might be founded on reasons he thought sufficient; yet the defendants' construction would take from him all his remedy, on the ground of that delay.

The jury found a verdict for the postmaster general for fifty-one dollars and sixty-five cents.